IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JOSHUA M. COVELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 1:23-cv-00001 |
| BUCKY ROWLAND, Sheriff, et al., | ) ) JUDGE CAMPBELL |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

On March 20, 2023, the Court granted Plaintiff Joshua Covell permission to proceed in forma pauperis and conducted a preliminary examination of his Complaint (Doc. No. 1). Because the Complaint "combine[d] Plaintiff's claims related to his allegedly unlawful surveillance, search, seizure of property, and arrest by Maury County Drug Task Force agents with claims related to the allegedly unconstitutional conditions of his confinement at the [Maury County] Jail," the Court found that it violated the federal joinder rules and gave Plaintiff 30 days in which to file an amended complaint that "does not join unrelated claims against unrelated parties." (Doc. No. 10 at 4–5.)

After filing an amendment that he appears to have composed prior to receiving the Court's March 20 Order (Doc. No. 13), Plaintiff has now filed a timely Amended Complaint that does not mis-join claims or parties. (Doc. No. 14.) That filing is Plaintiff's operative initial pleading in this matter and must therefore be initially reviewed under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

# I. INITIAL REVIEW

## A. Legal Standard

The Court must dismiss the Amended Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b). The review for whether the Amended Complaint states a claim asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), they must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). In applying this standard, the Court only assumes that the *facts* alleged in the Amended Complaint are true; allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement'" are not accepted as true. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Plaintiff filed this action under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, the Amended Complaint must allege "that a defendant acted under color of state law" and "that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir.

2012) (citations omitted).

**B. Analysis of the Complaint**

    1. <u>Allegations</u>

Plaintiff sues Maury County Sheriff's Deputy Joey Parks, 22nd Judicial District Drug Task Force Investigator Jeff Wray, the "City of Maury County," and Maury County Sheriff Bucky Rowland for their roles in "racially profiling [and] targeting" Plaintiff, amounting to "discrimination and retaliation" based on his act of "leaving or being in alleged drug houses or high crime areas." (Doc. No. 14 at 2–3.) He alleges that, on the afternoon of September 7, 2022, Wray and Parks were investigating a suspected drug house in Columbia, Tennessee, and when Plaintiff left that house, they targeted him for an unlawful traffic stop "without witnessing any crime" because they suspected "a Native American/White male with dreads of being a criminal." (*Id.* at 9.) Wray stated that "he could not read the tags" on Plaintiff's car but could see the wheels "still spinning when the vehicle approached the stop," so he "activated blue lights" on his unmarked truck based on Plaintiff's "fail[ure] to stop at a stop sign." (*Id.*) Plaintiff alleges that Wray "failed to produce any video footage for the alleged stop sign violation" and that the stop violated his Fourth Amendment rights. (*Id.*) He further alleges that Wray violated policies and duties by not utilizing his body camera or surveillance video and by failing to file a written report or preserve exculpatory evidence. (*Id.* at 10.)

Plaintiff alleges that the traffic stop was ultimately effected when Joey Parks used his unmarked cruiser "to drive the plaintiff off the road"—a use of force that Plaintiff characterizes as "excessive." (*Id.* at 11.) Unlike Wray, Parks's mobile video surveillance system was activated. (*Id.*) After Parks arrested and searched Plaintiff, Drug Task Force officers conducted a lengthy search of the area, but nothing illegal was found in the area or on Plaintiff's person. (*Id.* at 11–12.)

3

Plaintiff declined to consent to a search of his car, but Parks and other officers proceeded with the search even though they lacked a warrant. (*Id.* at 12.) Parks pried open the locked glovebox and found "a white brick substance" that field-tested "positive for cocaine." (*Id.* at 12–13.) Parks violated policy in reopening a sealed evidence bag in order to conduct the field test, and also failed properly to document this sequence of events and the evidentiary chain of custody. (*Id.* at 13.) Parks also, in order to "unlawfully arrest and detain" Plaintiff, provided false affidavit testimony to the General Sessions court, stating that Plaintiff failed to stop at a stop sign and evaded arrest when the "body cam" reveals otherwise. (*Id.* at 14.)

Parks filed a forfeiture warrant, but because he did not file it within 5 days of the arrest as required by "civil forfeiture procedure[s]," Plaintiff asserts that the seized car, $200 in currency, and other property should be returned. (*Id.* at 15–16.) Plaintiff's injuries are summarized as follows:

> Due to Joey Parks and Jeff Wray fail[ing] to follow policy[,] procedure[,] and TN law[,] Joey Parks and Jeff Wray targeted the plaintiff [and] illegally profiled the plaintiff for . . . exploratory search of his person[] and vehicle[,] violating the 4th Amendment. Joey Parks and Jeff Wray's lack of training, experience, or . . . regards to the law, policies or procedures has victimized the plaintiff Joshua Covell. The defendants violated multiple constitutional rights, policies, and procedures, falsified affidavits, and prevented Joshua Covell from a fair trial.

(*Id.* at 16–17.) Plaintiff alleges that Sheriff Rowland "employ[s] the Drug Task Force and Maury County Sheriff's Dep[artment]," and that he failed to train or supervise his employees to ensure compliance with state and federal law. (*Id.*) Plaintiff seeks an award of damages for the financial, emotional, and reputational injuries[1] he has sustained as a result of the "negligence" and "gross misconduct" of Defendants Parks and Wray, which violated applicable rules and policies, and

---

[1] Plaintiff also alleges "a broken hand[,] torn ligament[,] and . . . denied medical treatment" during his pretrial detention (Doc. No. 14 at 18), but does not specify when he suffered this physical injury or if it is connected to his arrest.

4

Plaintiff's rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. (*Id.* at 17–21; *see also id.* at 3.)

    2. Discussion

        a. Claims Under the First, Fifth, Sixth, and Fourteenth Amendments

To begin with, Plaintiff's claims of retaliation and other misconduct arising under the First, Fifth, and Sixth Amendments fail for lack of factual support. Plaintiff simply fails to plead any facts in support of a First or Sixth Amendment claim, and he cannot rely on the mere assertion of a legal conclusion such as "retaliation" to establish a plausible right to relief. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (in applying Rule 12(b)(6) standard, district courts accept as true all well-pleaded factual allegations but "need not accept a 'bare assertion of legal conclusions'").

Nor has Plaintiff properly pled any constitutional claim under the Fifth and Fourteenth Amendments related to the seizure of his car and other property. Though he alleges that Defendant Parks failed to file the forfeiture warrant in a timely manner under "civil forfeiture procedure[s]," generally governmental takings claims under the Fifth Amendment (as applied to the States via the Fourteenth Amendment) "are not cognizable where property is seized pursuant to forfeiture laws." *Sherman v. Tennessee*, No. 16-02625, 2017 WL 2589410, at *12 (W.D. Tenn. June 14, 2017) (citations omitted). Even if such a claim were cognizable, it would not be properly pled where, as here, there is no allegation that state remedies for an unlawful forfeiture are inadequate or unavailable. *See id.* (quoting *G.M. Eng'rs & Assocs., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 331 (6th Cir. 1990)).

Furthermore, though he alleges violations of multiple rules of the Tennessee "DOS" (Department of Safety) and "DHR" (apparently, Department of Human Resources) (*see* Doc. No.

5

14 at 19–21), Plaintiff does not claim a violation of his Fourteenth Amendment due process rights. Even if he did, "a violation of [state] procedural rules or regulations, without more, is not enough to establish a federal constitutional claim." *Rasheen v. Adner*, 356 F. Supp. 3d 222, 238 (N.D.N.Y. 2019) (citations omitted).

Finally, though Plaintiff claims that he was racially profiled and discriminated against when he was arrested "for leaving or being in alleged drug houses or high crime areas" (Doc. No. 1 at 3, 9), this assertion is at least lacking in the additional factual support necessary to plausibly claim a right to relief, if not self-defeating. Plaintiff's sole allegation in support of this claim is that he is "a Native American/white male with dreads." Even if the allegation related to Plaintiff's hairstyle could, in an appropriate case, reasonably be viewed as supporting an inference of racial profiling, *but see Lucas v. Lewis*, No. 1:22-CV-741, 2023 WL 235182, at *6 (S.D. Ohio Jan. 18, 2023) (finding insufficient factual allegations to support racial profiling claim when plaintiff merely alleged that arresting officers were white and implied that "she herself is non-white"), Plaintiff alleges in the same breath that he was followed by drug task force agents because he left a house under surveillance for suspected drug activity. Under these circumstances, his allegation of profiling cannot be characterized as anything other than speculative. And "[m]ere speculation that police operatives had selected a suspect because of racial bias is inadequate to support a racial profiling [or discrimination] charge." *Von Herbert v. City of St. Clair Shores*, 61 F. App'x 133, 149 & n.13 (6th Cir. 2003) (citing *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir.1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age [or race] discrimination.")).

6

### b. Fourth Amendment Claims

Plaintiff's remaining claims, and the gravamen of the Amended Complaint, are his claims of false arrest and unlawful seizure under the Fourth Amendment. "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (quoting *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). The allegations of the Amended Complaint pertaining to probable cause establish that, after following Plaintiff's car as it left the suspected drug house, Defendant Wray activated his blue lights to initiate the traffic stop but did not stop Plaintiff (Doc. No. 14 at 9); that Defendant Parks activated his blue lights and "used his vehicle . . . to drive the plaintiff off the road" (*id.* at 11); and that Parks later procured an "indictment" by swearing before the General Sessions court that Plaintiff "fail[ed] to stop at a stop sign" and "evaded arrest." (*Id.* at 14.) Liberally construing Plaintiff's allegations in the light most favorable to him, the Court finds for purposes of initial review that a colorable claim of false arrest without probable cause is sufficiently alleged against Defendants Wray and Parks in their individual capacity. While it is reasonable to infer from Plaintiff's allegations that he failed initially to pull over when Wray activated his blue lights, his references to the "unlawful traffic stop" and "the alleged stop sign violation" reported (but not recorded) by Wray (*id.* at 4, 9–10) establish that he disputes the asserted predicate for the stop. And probable cause for a charge of evading arrest depends on the existence of probable cause for a primary arrest; "[t]he traffic stop itself . . . [i]s not an arrest[.]" *United States v. Howard*, 423 F. Supp. 3d 493, 501 (M.D. Tenn. 2019). The Court cannot say at this early stage whether the allegedly warrantless detention and arrest of Plaintiff, or the warrantless search of his vehicle and locked glovebox, were supported by probable cause. The false arrest and improper seizure claim against Wray and Parks, as well as the attendant claim of

7

improper retention of personal property by Sheriff Bucky Rowland (*see* Doc. No. 14 at 16), will proceed for further development.

All remaining claims will be dismissed. Plaintiff's claims against Wray, Parks, and Sheriff Rowland in their official capacity are redundant of his claims against their alleged employer, Maury County,[2] and therefore subject to dismissal. "Official-capacity claims are 'in all respects other than name, to be treated as a suit against the entity'" employing the official; accordingly, "[w]here the entity is named as a defendant, an official-capacity claim is redundant." *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

As to Defendant Maury County, "[u]nder 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone. Rather, a local government can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citations omitted). Plaintiff has not identified any Maury County policy as the cause of the alleged constitutional violations he suffered. Indeed, rather than attributing the actions of Wray and Parks to any policy of Maury County, Plaintiff asserts that the officers' actions were in violation of applicable policies and procedures. (*See* Doc. No. 14 at 3, 10, 13, 16–17, 19–21.) Although he generally alleges that Wray and Parks were not properly trained (*id.* at 16), this allegation is conclusory and amounts to no more than a contention that the two officers lacked "better or more training[] sufficient to equip [them] to avoid the particular injury-causing conduct."

---

[2] Parks and Rowland are officials of the Maury County Sheriff's Department, an arm of Maury County. Wray is alleged to be a "Drug Task Force Investigator" employed by "22nd Judicial District - City Maury County." (Doc. No. 14 at 2.) Although the affiliation between Drug Task Force and County is not perfectly clear, this Court in other cases has, for purposes of initial review, "assume[d] that the Drug Task Force is a suable municipal entity." *Burley v. Arnold*, No. 3:21-cv-00326, 2021 WL 3115159, at *4 n.8 (M.D. Tenn. July 22, 2021).

*City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Such an allegation is "too generalized to support municipal liability" under a theory that the County had a policy or custom of improperly training its officers. *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citing *City of Canton*, *supra*); *see J.H. v. Williamson Cnty., Tennessee*, 951 F.3d 709, 721 (6th Cir. 2020) (stating that "plaintiffs can establish liability under a failure-to-train theory based on a single violation of federal rights," but only if the alleged violation is "accompanied by a showing that [the county] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation") (quoting *Shadrick v. Hopkins County*, 805 F.3d 724, 739 (6th Cir. 2015)). Maury County will thus be dismissed from this action.

Finally, while Sheriff Rowland is individually alleged to have "failed to train, employ[], and enforce TN and federal law or supervise his employees" (Doc. No. 14 at 17), such allegations are insufficient to plead his liability as a supervisor. Under Section 1983, supervisory liability requires some sort of active involvement with—rather than a mere failure of action to prevent—unconstitutional behavior that proximately causes injury to the plaintiff. *Crawford v. Tilley*, 15 F.4th 752, 761–62 (6th Cir. 2021). Because Plaintiff does not allege any "active unconstitutional conduct" on the part of Rowland, he fails to colorably claim Rowland's supervisory liability for the misconduct of any subordinate official. *Id.* at 767. Accordingly, Sheriff Rowland will only remain as a Defendant in this lawsuit for the purpose of answering Plaintiff's claim that, in light of his false arrest, the seizure and retention of his personal property is unlawful.

      c. <u>Stay of Proceedings</u>

Although Plaintiff's Fourth Amendment claims survive initial review, the Amended Complaint indicates that Plaintiff is currently involved in state criminal proceedings related to the arrest and seizure that form the basis of those claims. In these circumstances, the Court finds it

appropriate to stay Plaintiff's federal claims pending the resolution of the state criminal proceedings arising from Plaintiff's September 2022 arrest. *See Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) (citing *Heck v. Humphrey*, 512 U.S. 477, 487–88 n.8 (1994)) ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.").

The Court notes that if Plaintiff's state criminal proceedings are not resolved in his favor, the Fourth Amendment claims asserted in this case may face obstacles under the *Heck* doctrine. Under *Heck*, "a Section 1983 suit is not cognizable if it would 'necessarily' invalidate the plaintiff's conviction or sentence, unless the plaintiff can show the conviction or sentence had been set aside." *Sanders v. Detroit Police Dep't*, 490 F. App'x 771, 773 (6th Cir. 2012) (quoting *Heck*, 512 U.S. at 487). Thus, if Plaintiff is convicted in state court, and a favorable ruling in this case would necessarily invalidate his conviction(s), "*Heck* will require dismissal." *Wallace*, 549 U.S. at 394 (citing *Edwards v. Balisok*, 520 U.S. 641, 649 (1997)). Otherwise, this action may proceed, "absent some other bar to suit." *Id.*

## II. CONCLUSION AND INSTRUCTIONS TO PLAINTIFF

For these reasons, Plaintiff's claims under the Fourth Amendment against Defendants Wray, Parks, and Rowland are **STAYED** pending the resolution of the ongoing state criminal proceedings arising from Plaintiff's September 2022 arrest. All remaining claims, and Defendant Maury County, are **DISMISSED**. The Clerk is directed to **ADMINISTRATIVELY CLOSE** this case and maintain the physical file until further order.

Plaintiff **MUST** file a status report informing the Court of the status of his pending state proceeding within **6 MONTHS** from the date this Order is entered on the docket, and every 6 months thereafter until the state criminal proceeding is resolved. Within **30 DAYS** after the resolution of Plaintiff's state criminal proceeding, he **MUST** file a motion to reopen and proceed in this action.

Plaintiff is warned that the Court may dismiss this action if he does not comply with these instructions. Plaintiff is also warned that failure to keep the Court informed of his current address at all times may result in dismissal of this action. Fed. R. Civ. P. 41(b); Local Rule 41.01(b).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE